UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| JOHN D. SMITH, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | Cause No. 2:16-cv-100 |
| v. | ) |  |
|  | ) |  |
| UNITED STATES, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## OPINION & ORDER

John Smith has filed a *pro se* motion to enforce an order I entered in July 2015 releasing a restraining order on Smith's credit union account and ordering return of other property the government seized in April 2011. (DE 7.) Smith claims the government violated that order by (a) directing $13,514.78 to his ex-wife, (b) allowing the Bureau of Alcohol, Tobacco, and Firearms to keep $8,000, and (c) refusing to disclose how many boxes of unforfeited property there are so that Smith can arrange for long-term storage. (*Id.*) The government opposes the motion. (DE 15.) For the reasons below, Smith's motion to enforce is denied in part and granted in part.

### Background

On March 8, 2011, Smith sold numerous weapons to ATF undercover agents in exchange for a $7,000 money order and $1,000 cash. (*Id.* at 1.) A few days later, he endorsed the money order, received $3,000 cash, and deposited the remainder into an account he had at the Indiana Members Credit Union. (*Id.* at 13.) About a month after

1

that, he was arrested and charged on a seven-count indictment with conspiracy, drug trafficking, and weapons crimes. *See United States v. Smith,* No. 2:11-cr-53 (N.D. Ind. Apr. 7, 2011) (DE 1). The indictment sought criminal forfeiture of an unspecified amount of funds in Smith's credit union account, and a restraining order was issued freezing those funds just before Smith's arrest. *See id.; United States v. Smith*, No. 2:11-cr-53 (N.D. Ind. Apr. 13, 2011) (DE 6).

In June 2013, Smith was convicted of conspiring and attempting to possess with intent to distribute more than 5 kilograms of cocaine and possession of a firearm in furtherance of a drug trafficking crime. *Smith,* No. 2:11-cr-53 (N.D. Ind. June 6, 2013) (DE 101). He was sentenced to a mandatory minimum term of imprisonment of 40 years, and his conviction and sentence were affirmed on appeal. *United States v. Smith*, 792 F.3d 760 (7th Cir. 2015).

In early 2014, the government moved for the final forfeiture of a vehicle seized from Smith, and I granted the motion. *United States v. Smith,* No. 2:11-cr-53 (N.D. Ind. Jan. 31, 2014) (DE 147); *United States v. Smith,* No. 2:11-cr-53 (N.D. Ind. Feb. 4, 2014) (DE 148). Neither the government's motion nor the Final Order of Forfeiture addressed the credit union funds. *See id.*

In April 2015, Smith moved for release of the restraining order on the credit union funds and for return of all other unforfeited property that the government continued to hold. (DE 1.) In its response, the government conceded that because it "did not seek to forfeit Smith's bank account . . . the post-indictment restraining order should

be released or dismissed." (DE 3 at 2.) Evidently, the government knew—but did not advise the court—that the ATF intended to keep $8,000 of the $8,010.64 balance in the account at that time. (*See* DE 1 at 5 (showing balance); DE 15 at 15 (ATF notice dated 12/4/2014 regarding buy money).) As a result, I granted Smith's motion, ordered the restraining order lifted, and I directed the government to give Smith an inventory of all property to be released. (*See* DE 5.)

Smith has filed the instant motion to enforce because, although his credit union funds were unfrozen, he received no money and because he and the government cannot agree on how to move forward with the transfer of Smith's other property.

## Discussion

*Administrative Offset of $13,514.78 in Seized Funds*

Smith argues that the government violated the July 2015 order by releasing $13,514.78 in seized funds to his ex-wife instead of to his designated representative. (DE 7 at ¶¶ 6-8.) In its response, the government explains that U.S. Marshall Service policy requires seized money to be returned electronically via the U.S. Treasury Department. (DE 15 at 6–7.) Before making any disbursement, the Treasury Department searches for past due debts the would-be recipient owes to state or federal agencies and, if one is discovered, directs the amount owed to the agency. (*Id.; see also* 31 U.S.C. §§ 3716(a), (h).) When the Treasury Department searched for delinquent debts owed by Smith, it learned that he owed $32,000 in child support in Indiana, and it offset the seized funds ($13,514.78) against that debt. (*Id.* at 20–23.)

3

Smith argues that this put the U.S. Marshall Service's policy of releasing funds through the Treasury Department above the directives in my order, but that misreads the order. (*See* DE 16 ¶ 5; *see also* DE 5.) The July 2015 order did not direct the government to return the funds to Smith, but instead merely lifted the restraining order. (*See* DE 5.) After the restraining order was lifted, the U.S. Marshall Service took steps to return the money to Smith through the Treasury Department, which was statutorily authorized to offset any payment to Smith against delinquent child support pursuant to the federal administrative offset program. *See United States v. $37,000 U.S. Currency*, 117 F. Supp. 3d 1064, 1067 (S.D. Ind. 2015); *United States v. Approx. $3,174.00 in U.S. Currency*, 928 F. Supp. 2d 1040, 1043–44 (E.D. Wis. 2013).

Smith also argues that the Treasury Department should not have offset the seized funds because his child support obligations were stayed on July 2, 2015. (DE 7 at 4; *see also id.* at 19 (granting Smith's motion to abate his child support obligations as of the date of his incarceration).) That might be true, but, if it is, then Smith must take that up with the Orange County IV-D Prosecutor, as indicated in the notice of offset sent to him by the Department of Treasury. (*See* DE 15 at 20.)

For these reasons, Smith's motion to enforce is denied with respect to the $13,514.78 sent to satisfy purportedly past due child support obligations in Indiana.

***Retention of $8,000 by the ATF***

Smith next argues that the government violated my July 7, 2015 order by allowing the ATF to keep $8,000 of the money seized from his account. The government

4

counters that Smith was not entitled to return of the money because Rule 41(g) requires the movant to have an ownership interest in the property and clean hands. (DE 15 at 9.) The government further argues that $4,000 of the seized funds was likely ATF buy money Smith deposited into the account a month earlier and that, although Smith did not deposit the other $4,000 ATF paid him, "it does not seem equitable that defendant should be able to keep money obtained from egregious illegal activity."(*Id.* at 1, 10.)

While I agree in principle with those arguments, the government has failed to explain why these issues were not raised long ago. The government did not forfeit Smith's credit union funds, even though they were listed as subject to forfeit in the indictment. *See United States v. Smith*, No. 2:11-cr-53 (N.D. Ind. Apr. 7, 2011) (*See* DE 1 at 8; DE 147; DE 148.) In addition, the government did not oppose Smith's Motion to Release the Post-Indictment Restraining Order (DE 1)—in essence a Rule 41(g) motion—even though it could have easily overcome the presumption that Smith had a right to return of the seized funds (or $8,000 of them) by showing a "legitimate reason to retain the property." *See United States v. Crenshaw*, 2004 WL 742100, *1 (N.D. Ill. Mar. 31, 2004) (citations omitted). Instead, the government *conceded* that the funds should be released to Smith, without ever informing the court that ATF intended to recoup its money by keeping all but $10 of the money left in the account when Smith filed the motion. (*See* DE 3 ¶ 3; *see also* DE 1 at 5 (showing an account balance of $8,010.64 on December 31, 2014).)

And now, notwithstanding its inaction to date, the government wants a second

chance to argue that Smith was never entitled to the $8,000—and it wants to make that case, not on its own motion, but in response to Smith's motion to enforce. It has pointed to no authority that would excuse its failure to raise these issues before or that would entitle it to this relief now. Given these circumstances, the government was obligated to comply with my July 2015 order lifting the restraining order on the funds in Smith's credit union account, and it must now release the remaining $8,000.

*Return of Unforfeited, Non-Cash Property*

Smith's last complaint has to do with other property seized but not forfeited. He argues that the government still has not provided a complete inventory of the property, even though I ordered it to do so in July 2015. (*See* DE 16 at 2.) In addition, he asks me to direct the government to tell him how many boxes of unforfeited property there are, so that he can arrange for long term storage. (*Id.*) In its response, the government asserts that Smith has refused to name a designee but otherwise does not address these complaints. (DE 15 at 2–6.)

At this stage, I see no reason to order the government to expend the resources needed to count up the boxes of property that would be released, but I will direct the government to file (and serve upon Smith) all 17 pages of the inventory of seized property and to be sure that the inventory shows any disposition of such property. In addition, I will order Smith to designate someone for return of his unforfeited property.

## Conclusion

**Accordingly:**

(1) Smith's Motion to Enforce (DE 7) is (a) **DENIED** with respect to the $13,514.78 released to the U.S. Department of Treasury and Smith's request for more information on the non-forfeited property and (b) **GRANTED** with respect to the $8,000 retained by the ATF;

(2) The government is **DIRECTED** to comply with my July 7, 2015 order (a) by releasing the remaining $8,000 in seized currency and (b) filing and serving upon Smith a complete inventory, showing all of the seized property and any disposition;

(3) Smith is **DIRECTED** to name a point of contact to the government for return of his non-cash property **no later than January 15, 2017**; and

(4) Smith's motion for a hearing on the Motion to Enforce (DE 22) is **DENIED**.

**SO ORDERED.**

**ENTERED**: December 15, 2016.

s/ Philip P. Simon  
CHIEF JUDGE  
UNITED STATES DISTRICT COURT